GINDORFF et al. v. DEERING et al.

(Circuit Court, N. D. Illinois. March 1, 1897.)

1. PATENTS—PROCESS CLAIMS.
The mere manual transposition of an article which is being operated upon by a machine, so as to present another part of it to undergo a like operation with that just completed, does not, when superadded to the functions of the machine, constitute a process or method of treatment such as is contemplated by the patent law. Locomotive Works v. Medart, 15 Sup. Ct. 745, 158 U. S. 68, applied.

2. SAME—INVENTION—DUPLICATION OF PARTS.
An adaptation, which in a certain sense is only a duplication of parts which seems simple and obvious after it is once done, may be held to constitute patentable invention, and the need of some such device had long been recognized and vainly sought.

3. SAME—SERRATORS FOR SICKLE SECTIONS.
The Gindorff patent, No. 524,965, for a serrator for sickle sections, held valid and infringed as to the combination of claim 1, and void for want of patentability as to claims 4 and 5, which purport to cover a process.

This was a suit in equity by Matthew Gindorff against Deering &. Co. for alleged infringement of a patent.

Barton & Brown, for complainants.

Banning & Banning, for defendants.

GROSSCUP, District Judge. The bill is to restrain infringement of letters patent No. 524,965, issued to Matthew Gindorff, August 21, 1894. The defendants challenge the validity of the patent, and deny infringement. The invention relates to serrators for sickle sections. The patent describes the previous art as follows:

Heretofore machines for this purpose have been constructed with a chuck adapted to hold in position a sickle section, a pair of machine-actuated ham-

mers with knife edges, being located one upon either side of the section, and adapted to repeatedly strike the beveled edges thereof while being moved step by step from one end of the edge to the other, whereby a series of parallel indentations are formed in the beveled edges of the sections, the ends of the raised portion of the edge between the indentations projecting beyond the ends of the indentations to form teeth, which constitute the cutting edge of the sickle section. The hammer starts from the base end of the edge and travels toward the point of the section, and, as the hammers would meet before the edges were completed if actuated simultaneously, it has been customary to actuate one hammer at a time, thus entirely completing one edge of the section, and then, after the hammer has been returned to its original position, the second hammer is started, and completes the other edge.

There had also been previously an arrangement of machinery whereby two chucks, each adapted to a single sickle section, were placed about three feet apart, and the hammers actuated by machinery as described above, and worked simultaneously upon the edges of these sections. The complainant relies upon the first, fourth, and fifth claims, which are as follows:

(1) In a serrator, the combination with a chuck adapted to maintain two sections in position side by side, of a serrating tool adapted to be moved along the outer edge of one of said sections, a second serrating tool adapted to be moved along the outer edge of the other section, and means for simultaneously moving said serrating tools from the bases to the tips of the respective sections, or vice versa, substantially as described.

(4) The method of serrating sickle sections, which consists in maintaining the sections in position side by side, serrating the outer edges by machine-actuated serrating tools, transposing the sections, and then serrating in a similar manner the outer edges of the transposed sections, substantially as described.

(5) The method of serrating sickle sections, which consists in maintaining the sections in position side by side, simultaneously serrating one edge of each of the sections by machine-actuated serrating tools, transposing the sections, and then simultaneously serrating in a similar manner the unserrated edges of the transposed sections.

The two last-mentioned claims are process claims. It is my opinion that under the case of Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, these claims cannot be sustained. Except for the described functions of the machine, there is nothing more stated in the patent than the fact of a manual transposition of the sickles after their outer edges have been serrated, so that the inner edges may undergo a like operation. Such transpositions, superadded to the functions of the machine, do not make the treatment a method, or process, or art such as the patent law contemplates.

The first claim is for a combination, and depends upon whether the element of the combination described as a "chuck," adapted to maintain two sections in position side by side, is novel and patentable. Its novelty is not denied. The only serious question is whether it evinces invention or merely mechanical adaptation. It is, in a certain sense, only the duplication of the old chuck, and seems very simple and obvious; but it must be remembered that the simple chuck was in use for many years, and that the need of some device whereby the two edges of the section could be serrated at the same time had been long felt and recognized. If this chuck were obvious to mere mechanical skill, why had not such skill, already called upon, supplied the need before? I fear that under these circumstances, were I to hold it mere mechanical adaptation, I would be considering

myself a wiser and better mechanic than those who for years had
overlooked this method of accomplishing a desired result.   This,
opinion is re-enforced by the fact that the defendants themselves,
immediately on their attention being called to this device, recognized
its value and importance, and began negotiations for its acquirement.
It seemed, doubtless, to them an important improvement, long needed,
but long overlooked.    It is original conception, not skill, that sup-
plies a remedy for a defect long, but hitherto vainly, looked for.

The proof satisfies me that the defendants have used the combina-
tion described in the first claim.    A decree may therefore be entered
in favor of the complainants upon the first claim, and dismissing the
bill as to the fourth and fifth.